## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

## CIVIL RIGHTS COMPLAINT FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

Willie Menardo McKinnon,

Inmate # C05908.

(Enter full name of Plaintiff)

VS.

CASE NO: 3:18-CV-1191-LAC/EMT

(To be assigned by Clerk)

B. HULLETT, Sergeant,
W. Clemmons, Warden,
J. Jones, Director,
J. Tuttle, officer,
C. Jackson, officer,

F. SCHEIER, officer
J. Carrico, officer
M. Williams, Nurse
Centurion of Florida, Florida DOC Healthcare provider

(Enter name and title of each Defendant. If additional space is required, use the blank area below and directly to the right.)

A. Gaskins, Florida DOC State Dietician

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I.    PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:    Willie Menardo McKinnon

Inmate Number    C05908

Prison or Jail:    Santa Rosa Correctional Institution

Mailing address:    5850 East Milton rd.

Milton, FL 32583

## II.    DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for <u>every</u> Defendant:

(1)    Defendant's name:    B. HULLETT

Official position:    Sergeant

Employed at:    Santa Rosa C.I. (or Santa Rosa County Jail)

Mailing address:    5850 East Milton rd.

Milton, FL 32583

(2)    Defendant's name:    W. Clemmons

Official position:    Warden

Employed at:    Santa Rosa C.I.

Mailing address:    5850 East Milton rd

Milton, FL 32583

(3)    Defendant's name:    J. Jones

Official position:    Director

Employed at:    Florida Dept. of Corrections

Mailing address:    501 South Calhoun Street

Tallahassee, FL 32399

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

II Defendants. [Cont.]

(4) Defendant's name : J. Tuttle
   Official Position   : Officer
   Employed at         : Santa Rosa C.I.
   Mailing Address     : 5850 East Milton rd
                         Milton, FL 32583

(5) Defendant's name : F. Scheier
   Official Position   : Officer
   Employed at         : Santa Rosa C.I.
   Mailing Address     : 5850 East Milton rd
                         Milton, FL 32583

(6) Defendant's name : J. Carrico
   Official Position   : Officer
   Employed at         : Santa Rosa C.I.
   Mailing Address     : 5850 East Milton rd
                         Milton, FL 32583

(7) Defendant's name : C. Jackson
   Official Position   : Officer
   Employed at         : Santa Rosa C.I.
   Mailing Address     : 5850 East Milton rd
                         Milton, FL 32583

(8) Defendant's name : M. Williams
   Official Position   : Nurse
   Employed at         : Santa Rosa C.I.
   Mailing Address     : 5850 East Milton rd
                         Milton, FL 32583

II Defendants [cont]

(9) Defendant's name : Centurion of Florida
    Official Position  : Florida DOC Healthcare Provider
    Employed at    : Florida Department of Corrections
    Mailing Address : 501 South Calhoun Street
                  Tallahassee, FL 32399

(10) Defendant's name : Angela Gaskins
    Official Position  : State Dietician
    Employed at    : Florida Department of Corrections
    Mailing Address : 501 South Calhoun street
                  Tallahassee, FL 32399

   Defendant Julie Jones was the Director of the Florida Department of Corrections. She is legally responsible for the overall operation of the Department of Corrections and each institution under its jurisdiction, including Santa Rosa Correctional Institution

   Defendant Centurion of Florida is the Florida Department of Corrections Healthcare provider / medical Department. Centurion of Florida is legally responsible for medical personnel, and policies and procedures and protcols related to medical issues

   Defendant Walker Clemmons is the Warden of Santa Rosa Correctional Institution. He is legally responsible for the operation of Santa Rosa Correctional Institution and for all the inmates housed at that institution.

   Defendant Angela Gaskins is the State Dietician for the Florida Department of Corrections. She is legally responsible for the coordination of the menu for all diets availible to inmates at Florida Department of Corrections institutions.

   Defendant Brian Hullett is a correctional officer of the Florida Department

of Corrections who, at all times mentioned in this complaint held the rank of Sergeant and was assigned to Santa Rosa Correctional Institution

Defendant John Tuttle is a correctional officer of the Florida Department of Corrections who, at all times mentioned in this complaint held the rank of Officer and was assigned to Santa Rosa Correctional Institution.

Defendant Chase Jackson is a correctional officer of the Florida Department of Corrections who, at all times mentioned in this complaint held the rank of Officer and was assigned to Santa Rosa Correctional Institution.

Defendant Frank Scheier is a correctional officer of the Florida Department of Corrections who, at all times mentioned in this complaint held the rank of Officer and was assigned to Santa Rosa Correctional Institution.

Defendant Jesse Carrico is a correctional officer of the Florida Department of Corrections who, at all times mentioned in this complaint held the rank of Officer and was assigned to Santa Rosa Correctional Institution.

Defendant M. Williams is an employee of Centurion of Florida which is the Florida Department of Corrections healthcare provider / medical department. At all times mentioned in this complaint Williams held the rank of Nurse and was assigned to Santa Rosa Correctional Institution.

Each Defendant is sued individually and each Defendant is sued in their official capacity. At all times mentioned in this complaint each Defendant acted under the color of state law.

III.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

IV.   **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( )                    No(✓)

1.   Parties to previous action:
(a)   Plaintiff(s): _____
(b)   Defendant(s): _____
2.   Name of judge: _____   Case #: _____
3.   County and judicial circuit: _____
4.   Approximate filing date: _____
5.   If not still pending, date of dismissal: _____
6.   Reason for dismissal: _____
7.   Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )                    No(✓)

1.   Parties to previous action:
a.   Plaintiff(s): _____
b.   Defendant(s): _____
2.   District and judicial division: _____
3.   Name of judge: _____   Case #: _____
4.   Approximate filing date: _____
5.   If not still pending, date of dismissal: _____
6.   Reason for dismissal: _____

6

7.    Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.    Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( ✓ )                    No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.    Parties to previous action:
      a.    Plaintiff(s): _State of Florida_
      b.    Defendant(s): _Willie McKinnon_
2.    District and judicial division: _Osceola County, FL ; Ninth Judicial Circuit_
3.    Name of judge: _Leticia Marques_      Case #: _2010 - CF - 001913_
4.    Approximate filing date: _April 2013_
5.    If not still pending, date of dismissal: _August 26, 2015_
6.    Reason for dismissal: _No manifest injustice shown_
7.    Facts and claims of case: _Involuntary Plea and Ineffective assistance_ _of counsel_

**(Attach additional pages as necessary to list cases.)**

D.    Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )                    No( ✓ )

1.    Parties to previous action:
      a.    Plaintiff(s): _____
      b.    Defendant(s): _____
2.    District and judicial division: _____
3.    Name of judge: _____ Case Docket # _____
4.    Approximate filing date: _____ Dismissal date: _____
5.    Reason for dismissal: _____

C. [CONT]

1. Parties to previous action
    a. Plaintiff(s) : Willie McKinnon
    b. Defendant(s) : State of Florida
2. District and judicial division : Fifth District Court of Appeal, FL
3. Name of judge(s): Palmer, Torpy, Evander   Case #: 5D17-985
4. Approximate filing date : May 2017
5. If not still pending, date of dismissal: N/A
6. Reason for dismissal : N/A
7. Facts and Claims of case : Petitioner was under the impression that hired counsel was filing an Initial Brief on Petitioner's behalf. Hired counsel did not but stated he believed that Petitioner desired the Initial Brief to be filed.

1. Parties to previous action
    a. Plaintiff(s) : Willie McKinnon
    b. Defendant(s) : State of Florida
2. District and judicial division : Fifth District Court of Appeal, FL
3. Name of judge(s) : Sawaya, Berger, Lambert   Case #: 5D17-1618
4. Approximate filing date : September, 2017
5. If not still pending, date of dismissal : January, 2018
6. Reason for dismissal : No manifest injustice shown
7. Facts and Claims of case : Ineffective assistance of counsel and involuntariness of plea. The plea agreement is illegal due to a misstatement of the law of the State of Florida contained in the plea agreement.

1. Parties to previous action
    a. Plaintiff(s) : Willie McKinnon
    b. Defendant(s) : State of Florida
2. District and judicial division : Osceola County, FL ; Ninth Judicial Circuit
3. Name of judge(s) : Unknown          Case # : 2010-CF-001913
4. Approximate filing date : May, 2018
5. If not still pending, date of dismissal : Still pending
7. Facts and claims of case : Involuntariness of plea. Illegal plea agreement / sentence that violates the laws of the State of Florida.

# STATEMENT OF FACTS

1) On December 13, 2017 at the time frame of approximately 11:20 AM - 1:15 pm at Santa Rosa Correctional Institution in Wing 2 of Gulf dormitory the following incident took place.

2) Minutes prior to Jackson and Tuttle entering wing 2 to feed lunch, inmates were banging on doors crying for help for the unresponsive Plaintiff. Jackson and Tuttle have extensive prior knowledge of the Plaintiff being diabetic and at risk for hypoglycemia. As Jackson and Tuttle entered the wing, inmates immediately grabbed their attention letting the officers know that the Plaintiff was unresponsive. One or both of the officers went to check on the Plaintiff. One or both of the officers saw the Plaintiff was unresponsive in cell 117 but began to feed anyway instead of notifying the chain of command or radioing for medical emergency assistance.

3) As Jackson and Tuttle are feeding the bottom floor they make it to the Plaintiffs cell who is still unresponsive. Again, instead of notifying the chain of command or radioing for medical emergency assistance, Tuttle and Jackson just leave the Plaintiffs tray on his flap and continue feeding the bottom floor. The Plaintiff still lays unresponsive. Next, Jackson and Tuttle go to the top floor to feed the entire top floor while Plaintiff still lays unresponsive and suffering.

4) After feeding the entire wing Jackson and Tuttle return to the Plaintiffs cell and instead of following Department rules, regulations, and procedures and providing access to medical treatment from qualified medical personnel, Tuttle and Jackson unauthorizedly radioed for the Plaintiff cell door to be opened. Tuttle and Jackson stood outside of the Plaintiffs cell while the officers let another inmate inside the Plaintiffs cell to dangerously attempt unqualified treatment for the Plaintiffs life-threatening state. The Plaintiff was a CM-1 level house alone status inmate at the time and Jackson and Tuttle allowed a CM-3 level into the Plaintiffs cell. Throughout Jackson and Tuttles involvement in this incident did either one of them take it upon themselves to notify the chain of command or radio for medical emergency assistance to begin the process of providing access to medical treatment

for the Plaintiff, not only delaying access to medical treatment for a non-medical reason but denying it altogether. It was denied altogether by Tuttle and Jackson because the only reason the next in the chain of command became aware of the Plaintiffs serious medical need is because the next in the chain of command (B. Hullet) walked up to the situation at the Plaintiffs cell when he saw the Plaintiffs cell open and heard it over the radio for the Plaintiffs cell to be opened. B. Hullet walked up to the situation under his own cognizance, not from Tuttle or Jackson notifying him.

5.) All the while the Plaintiff is in hypoglycemic shock and in seizure, immobilized and unable to move voluntarily. The Plaintiff is also suffering from positional asphyxiation, stuck on his back and choking on his own tongue and mucus and saliva. The Plaintiff also suffered autonomicly and neuroglycopenicly. Autonomic symptoms include but are not limited to sweating, trembling, feelings of warmth, anxiety, nausea, coma, and death. Neuroglycopenic symptoms include but are not limited to dizziness, confusion, tiredness, inability to concentrate, headache, difficulty speaking, coma and death.

6) Hullet walks up to the situation and orders the unauthorized inmate out of the Plaintiffs cell and orders everyone off of the wing. Once everyone leaves the wing with the Plaintiff still suffering and in dire need of medical treatment inmates begin banging on doors yelling "Man down! 17 bottom!" repeatedly. Minutes elapse. Plaintiff is still in a life-threatening hypoglycemic episode, suffering from positional asphyxiation, autonomicly and neuroglyco-penicly when Hullet returns to the wing acting as if he is conducting a security check when an inmate stops him to let him know about the Plaintiff being unresponsive. Hullet acts as if this is new information and makes a "B-Line" to the Plaintiffs cell. Hullet still gets no response from the Plaintiff as he stands at the Plaintiffs cell. Hullet was aware of the Plaintiffs unresponsiveness and has extensive prior knowledge that the Plaintiff is a diabetic. As Hullet stands there, he has not radioed for emergency assistance. Inmates begin yelling things like "Sarge, you see he cant move!", "he's incoherent!", "you're just standing there, do something!". Hullet responds with explicitives and then leaves the wing again while the Plaintiff severely suffers, in a life-

10

threatening state.

7) More time elapses as the Plaintiff lay suffering in a life-threatening state. Other inmates are perpetually crying for help for the Plaintiff. Jackson, Tuttle and Hullett are aware of the Plaintiff's need for medical treatment and have yet to provide it. Finally Scheier and Carrico enter the wing to count. Inmates immediately grab their attention letting them know the Plaintiff is unresponsive. Scheier has extensive prior knowledge of the Plaintiff being diabetic and at risk for hypoglycemia. Scheier and Carrico respond to the other inmates cries for help for the Plaintiff by yelling "count is more important!"

8) Scheier and Carrico conduct count. When they get to the Plaintiffs cell they see his condition and keep going as if nothing was amiss. The inmates were informing them of the Plaintiff needing immediate medical attention, Scheier and Carrico counted and saw but obviously did not care that inmates were trying to warn them, did not care altogether that the Plaintiff needed immediate medical attention, or Scheier and Carrico were following the institutionally adopted custom or the Department regulation that "count is more important" than Scheier and Carrico providing access to medical treatment for the Plaintiff. After counting, Scheier and Carrico exit the wing. They leave the Plaintiff still suffering severely in a life-threatening state, denying access to medical treatment. More time elapses.

9) The other inmates have been continuously crying for help for the Plaintiff. Finally, after count is clear, Hullett comes onto the wing with another officer(s) (unknown) and properly breach the Plaintiffs cell to Department procedure and place hand and leg restraints on the Plaintiff and place the Plaintiff in a wheelchair. The Plaintiff cannot walk, speak, stand, or even lift his head as he is being wheelchaired to the medical triage room in Gulf dormitory.

10) When the Plaintiff arives in the medical triage room Nurse Williams

says "Oh my God! He's one step away from a coma!". The Plaintiffs blood sugar was "43". That is life-threateningly low. While Williams is attempting treatment for the Plaintiffs hypoglycemia, Hullett is walking in and out of medical triage telling Williams that the Plaintiff needs to be back in his cell ASAP because the Warden was coming to Gulf dorm for inspection and Hullett wanted to look good for the warden. Without the nuisance of Hullett pushing and persuading Williams to "hurry up" with the treatment of the Plaintiff, the Plaintiff would have never been returned to his cell prematurely, still suffering from hypoglycemia. Due in part to Hulletts interference with medical treatment, Williams did not fulfill the Departments protocol for treating hypoglycemia.

11) Thus, the Plaintiff was wheelchaired back to his cell prematurely and still in a severe state of hypoglycemic shock. Hullett had a hand in the reason why the Plaintiff was returned to his cell untreated for hypoglycemia. As the Plaintiff is being wheelchaired back to his cell, Hullett knew the Plaintiff was not okay for a few reasons: 1) Hullett rushed Williams into not fulfilling the protocol for treating hypoglycemia and sending the Plaintiff back to his cell prematurely while still suffering from hypoglycemia so that Hullett can look good for the Wardens dorm inspection. 2) Hullett has extensive prior knowledge of the Plaintiff being diabetic and at risk for hypoglycemia and as Hullett was wheelchairing the Plaintiff back to his cell the Plaintiff could still not walk, talk, stand or even lift his head and 3) Hullett literally had to lift the Plaintiff out of the wheelchair and drag the still restrained Plaintiff into his cell. After placing the still restrained Plaintiff in the cell, Hullett walked out of the cell and left the continuously suffering Plaintiff locked inside the cell and handcuffed.

12) Hullett walked off the wing after leaving the Plaintiff locked in restraints and locked in his cell still in hypoglycemic shock for another 45 mins. - 1 hour. The Plaintiff was moaning as if in pain trying to get somebody to help him. The Plaintiff was attempting to yell "Glucose! Glucose!" because the Plaintiff knew this is all that was needed to eliminate

the substantial risk of the Plaintiff's life hanging in the balance. Throughout the entire incident the Plaintiff was aware that his life was in danger while in his severe state of suffering. Inmates were crying for help the entire time the Plaintiff was stuck in his cell handcuffed still in hypoglycemic shock. The Plaintiff was once again stuck on his back choking in positional asphyxiation. Nobody responded to the cries for help.

13) The Warden and supervisors are finally present for inspection. Captain A. Parrott responded to the inmates cries for help in Wing 2 of Gulf dorm. Parrott looks inside of the Plaintiff's cell once inmates give the Plaintiff's cell location. Per Florida Department of Corrections policies and/or procedures- CM1 level inmates cell doors are not to be opened unless the inmate is in handrestraints. When Parrott looks inside of the Plaintiff's cell, he sees the Plaintiff stuck on his back and handcuffed. Because Parrott sees the Plaintiff handcuffed, Parrott immediately radios for the Plaintiff's cell to be opened. The Plaintiff is seen by Nurse Williams again. This time the Plaintiff's blood sugar was "53" which is still a severe and life-threatening state of hypoglycemia. The Plaintiff was treated and sent back to his cell although not fully treated.

14) The State Dietician is believed to be Angela Gaskins. Gaskins revoked the 2800 calorie therapeutic diet for diabetics. The 2800 calorie therapeutic diet consisted of a snack with each meal so that diabetics may have sustenence between each meal to avoid severe hypoglycemic cases. The 2800 calorie therapeutic diet was revoked which revoked a snack available between breakfast and lunch meals, and lunch and dinner meals. The Plaintiff fell into a life-threatening state of hypoglycemia between the breakfast and lunch meals where the snack was revoked. It is unsure how long the Plaintiff was suffering prior to being discovered. The revocation of this vital snack to a diabetics health needs is a proximate cause of a few related to this incident.

# STATEMENT OF CLAIMS

1) Defendants Tuttle and Jackson have violated the Plaintiff's Eighth Amendment right to medical care because prior to coming onto the wing to feed chow inmates were crying for help for the Plaintiff, and when Tuttle and Jackson initially entered the wing inmates began to grab their attention immediately to let the two officers know they had an unresponsive Plaintiff (who Tuttle and Jackson knew was diabetic and at risk for hypoglycemia). Then, one or both Tuttle and Jackson went to check for the Plaintiff's unresponsiveness and saw that the Plaintiff was unresponsive but they decided to begin feeding chow anyway without notifying the chain of command or radioing for medical emergency assistance, delaying the Plaintiff's access to medical treatment for non-medical reason(s) which violates the Plaintiff's Eighth Amendment right to medical care. Next, in the process of feeding chow Tuttle and Jackson get to the Plaintiff's cell and still get no response from the Plaintiff and they leave the Plaintiff's tray on the flap and keep going to finish feeding the entire bottom floor without providing access to medical treatment for the Plaintiff while they know the Plaintiff needs medical treatment. After that, Tuttle and Jackson go to the top floor to feed the entire top floor without having provided access to medical treatment while they know the Plaintiff needs it, still delaying access to medical treatment for the Plaintiff for non-medical reasons which violates the Plaintiff's Eighth Amendment right to medical care. Then, after feeding the entire wing Tuttle and Jackson return to the Plaintiff's cell to unauthorizedly allow another inmate inside the Plaintiff's cell to attempt unqualified medical treatment which could have potentially killed the Plaintiff. The Plaintiff was put at an unreasonable risk with that careless decision by Tuttle and Jackson. The Plaintiff was also put at unreasonable risk when Tuttle and Jackson failed to provide access to medical treatment in order to begin, continue, and to finish feeding chow, while the Plaintiff lay in fear of losing his own life and suffering from hypoglycemia severely, positional asphyxiation, auto-nomically, and neuroglycopenicly. Degeneration is very likely to occur while coma and/or death lingered. Tuttle and Jackson delayed treatment for non-medical reasons then ultimately denied the Plaintiff access to medical treatment. This placed emotional distress on the Plaintiff for the Plaintiff was in fear and very close to losing his life.

2) Defendant Hullett was the next in the chain of command to Tuttle and Jackson. Tuttle nor Jackson contacted the chain of command or medical to provide access to medical treatment. The next in the chain of command became aware of the situation under his own cognizance, not because Tuttle or Jackson notified him, meaning Tuttle and Jackson delayed then denied access to medical treatment for the Plaintiff. Hullett violated the Plaintiff's Eighth Amendment right to medical care for the following reasons: a) when Hullett failed to radio for medical emergency assistance once he initially knew the Plaintiff needed medical treatment, b) when Hullett came back onto the wing and acted like he was unaware of the Plaintiff's serious medical need and made a "B-Line" to the Plaintiff's cell and still had not provided access to medical treatment, c) when Hullett interfered with medical's treatment to the Plaintiff getting the Plaintiff sent back to his cell prematurely, before the Plaintiff could be treated for hypoglycemia so that Hullett can look good for the Warden's dorm inspection, d) when Hullett wheelchaired the Plaintiff back to his cell, Hullett knew the Plaintiff was not okay as the Plaintiff was in the same condition unable to even lift his head yet Hullett hastily got the Plaintiff back in the cell and e) Hullett violated the Plaintiff's Eighth Amendment right by literally dragging the Plaintiff out of the wheelchair and into the cell while the Plaintiff was handcuffed, leaving the Plaintiff handcuffed and locking the Plaintiff's cell leaving the Plaintiff in a dangerous and overly restrictive condition aggravating the Plaintiff's already severe hypo-glycemia. The Plaintiff was left handcuffed in severe hypoglycemia by Hullett in a cell for 45 mins - 1 hour. This constitutes "cruel and un-usual punishment" by Hullett. Hullett violated the Plaintiff's Eighth Amendment rights to medical care and an Eighth Amendment violation of cruel and unusual punishment. The Plaintiff was placed under emotional distress for the fear of losing his own life. Hullett's interference and delay in treatment is a proximate cause of degeneration and a proximate cause of lingering coma and/or death. The Plaintiff was put at a unreasonable risk.

3) SCHEIER and Carrico violated the Plaintiff's Eighth Amendment

right to medical care because when Scheier and Carrico came onto the wing to count inmates immediately grabbed their attention letting them know the Plaintiff was unresponsive (coupled with Scheier's extensive prior knowledge of the Plaintiff being a diabetic and at risk for hypoglycemia). Scheier and Carrico responded with "Count is more important!" than the Plaintiff's serious medical need. Scheier and Carrico counted and exited the wing never having provided access to medical treatment. Scheier and Carrico were informed of the unresponsive Plaintiff, responded "Count is more important!", saw the Plaintiff's condition when they counted and still did not provide access to medical treatment for the Plaintiff. The Plaintiff laid suffering from severe hypoglycemia, positional asphyxiation, autonomicly, and neuroglycopenicly. Scheier's and Carrico's denial of providing access to medical treatment put the Plaintiff at an unreasonable risk for injury, harm, degeneration, and lingering coma and/or death. The Plaintiff was under emotional distress for the fear of losing his own life. Scheier and Carrico were negligent for failing to use reasonable care.

4) Defendant Williams violated the Plaintiff's Eighth Amendment right to medical care for providing grossly inadequate treatment. The Plaintiff's blood sugar level was "43" when Williams initially checked the Plaintiff's blood sugar level. The Plaintiff did not have control of his own faculties or was even able to lift his head when the Plaintiff was taken to medical triage. When the Plaintiff left, he was in the same condition or very similar to it. The Plaintiff was not treated to protocol for severe hypoglycemia. The Plaintiff was clearly undertreated and sent back to his cell in part of Williams' negligence and Hullett's interference in treatment. The Plaintiff also raises a claim of medical malpractice through negligence. As the Plaintiff was sent back to his cell still suffering from hypoglycemia severely, the Plaintiff was put at unreasonable risks of injury, harm, degeneration, while coma and/or death lingered. The Plaintiff was supposed to be treated for his severe hypoglycemia but was not and was put under emotional distress for

the fear of losing his own life. The Plaintiff was put at unreasonable risks.

5) Defendants Clemmons and Jones is in violation of the Plaintiff's Eighth Amendment right to medical care because they have adopted a custom or policy that "count is more important" than an inmates life-threatening medical need. Scheier and Carrico implemented this policy when other inmates desperately brought it to Scheier's and Carrico's attention that the Plaintiff was unresponsive and needed medical treatment (Scheier also knows the Plaintiff is a diabetic and at risk for hypoglycemia). The Plaintiff was never provided access to medical treatment by Scheier or Carrico, denying the Plaintiff because of the custom/policy adopted by the institution/Department of Corrections. The Plaintiff layed there suffering in hypoglycemic shock, positional asphyxiation, autonomicly and neuroglycopenicly. The Plaintiff was put at an unreasonable risk for injury, harm, and degeneration while coma and/or death lingered. The Plaintiff was under emotional distress for the fear of losing his own life. The adopted custom/policy by the institution/Department of Corrections is a proximate cause for the Plaintiff's pain, suffering, and being put at unreasonable risks.

6) Centurion of Florida has violated the Plaintiff's Eighth Amendment right to medical care because Centurion of Florida did not provide a snack in between the meals where a snack was not provided by the **med dept or** State Dieticians for diabetics, the inadequate response by medical personnel to respond to the Plaintiff's serious medical need, the failure to provide a policy for responding to severe hypoglycemic situations, and failing to have enough medical staff present to deal with the institutions medical needs.

7) Angela Gaskins has violated the Plaintiffs right to medical care guaranteed by the Eighth Amendment. Gaskins revoked the 2800 calorie therapeutic diet for diabetics which provides a snack between each meal for diabetics. This is a necessity for diabetics to avoid severe hypoglycemic

17

situations and episodes. Because of the revocation of the vital snack for diabetics the Plaintiff fell into a severe state of hypoglycemic shock. The revocation of the snack is a violation of the Plaintiff's Eighth Amendment right to medical care. The Plaintiff's health require this snack

# RELIEF REQUESTED

1) The Plaintiff seeks relief in the form of an injunction. The Plaintiff would request the policy/custom that "Count is more important" than a inmates medical need where coma, death, or other significant injury or damage is likely a risk be done away with. The Plaintiff requests that all diabetics at Santa Rosa Correctional Institution- Main Unit and other Close Management housing facilities be house in one unit in a specific location where it is well known that these inmates are diabetics and/or at risk for hypoglycemia. Medical would only have to report to one dormitory to administer insulin. For diabetics who take insulin injections to be provided a snack between meals to avoid hypoglycemic cases. Also for the 2800 calorie therapeutic diet to be reimplemented. The Plaintiff would also request a response time be set for hypoglycemic emergencies

2) The Plaintiff seeks relief in the form of money damages from each Defendant severally and jointly. The Plaintiff requests compensatory damages for the suffering, pain, mental anguish, fright and shock, and embarrassment the Plaintiff endured and being put at unreasonable risks the entire incident by each named Defendant. The Plaintiff requests punitive damages because of the Defendants recklessness at multiple points throughout this incident, Defendants abused their official power, Defendants took unfair advantage of the Plaintiff and put the Plaintiff at unreasonable risks throughout the entire incident. The Plaintiff requests nominal damages for his constitutional rights being violated.

I DECLARE UNDER THE PENALTY OF PERJURY THAT
THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL
CONTINUATION PAGES, ARE TRUE AND CORRECT.

    4/7/19                          /s/ _____
    (Date)                          Signature of Plaintiff


   This Complaint was delivered to prison officials for mailing
on this 7th day of April    , 2019.

                              /s/ _____
                              Signature of Plaintiff



US POSTA
ZIP 32583
02  1W
000140304

MAILED FROM A STATE
CORRECTIONAL INSTITUTION

Willie McKinnon C05908
Santa Rosa Correctional Institution
5850 East Milton rd.
Milton, FL 32583

CHECKED  APR 0 9 2019

Clerk of the Court
U.S. District Court
100 North Palafox Street
Pensacola, FL 32502

FOR MAILING BY
APR 0 7 2019
SANTA ROSA C.I. ON
PROVIDED TO