IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIE MENARDO MCKINNON,
    Plaintiff,

vs.                                                       Case No.:  3:18cv1191/LAC/EMT

SERGEANT B. HULLETT, et al.,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the court on a joint motion to dismiss filed by Defendants Centurion of Florida, LLC ("Centurion") and Nurse Marie Williams ("Nurse Williams") (ECF No. 93), and Defendants' Supplement to their motion to dismiss (ECF No. 96). Plaintiff Willie Menardo McKinnon ("McKinnon") filed a response in opposition to dismissal (ECF No. 102). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the parties' submissions and the relevant law, the undersigned concludes that Defendants' motion to dismiss should be granted.

I.   BACKGROUND

McKinnon, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). The operative pleading is now McKinnon's Third Amended Complaint (ECF No. 84). McKinnon names ten Defendants: (1) Centurion, (2) Nurse Williams, (3) Sergeant B. Hullett, (4) Warden W. Clemmons, (5) former FDOC Secretary J. Jones, (6) Officer J. Tuttle, (7) Officer C. Jackson, (8) Officer F. Scheier, (9) Officer J. Carrico, and (10) FDOC Dietician A. Gaskins. McKinnon asserts Eighth Amendment claims of deliberate indifference to his need for medical treatment for a hypoglycemic episode on December 13, 2017. McKinnon also asserts state law medical negligence/malpractice claims. McKinnon seeks injunctive relief and monetary damages.

On May 19, 2019, Defendants Centurion and Nurse Williams filed a motion to dismiss asserting the following defenses: (1) McKinnon's federal claims are subject to dismissal for failure to exhaust administrative remedies; (2) McKinnon failed to meet the conditions precedent to bringing state claims for medical negligence/malpractice; (3) McKinnon's factual allegations fail to state a plausible Eighth Amendment claim; (4) Centurion and Nurse Williams are entitled to qualified immunity with respect to McKinnon's federal claims against them in their individual capacities; (5) Centurion and Nurse Williams are entitled to Eleventh Amendment

immunity with respect to McKinnon's claims for monetary damages against them in their official capacities; and (6) McKinnon's federal claims for monetary damages are barred due to the lack of physical injuries (*see* ECF No. 93). Centurion and Nurse Williams subsequently withdrew their qualified immunity defense (*see* ECF No. 96).

McKinnon filed a Response in opposition to the motion to dismiss (ECF No. 102). McKinnon contends he exhausted his administrative remedies. He further contends his factual allegations state a plausible Eighth Amendment claim. With respect to the state claims, McKinnon argues the motion to dismiss did not specify that it was seeking dismissal of the state law claims. He contends, "the Defendants should motion specifically for the dismissal of state law claims" (*id.* at 3).

II.   FAILURE TO STATE A FEDERAL CLAIM UNDER § 1983

   A.   Motion to Dismiss Standard

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). The court may consider documents attached to a

complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); Bro*oks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

  B. <u>McKinnon's Factual Allegations</u>

The Third Amended Complaint sets forth the factual allegations that follow (*see* ECF No. 84 at 9–13).[1] On December 13, 2017, at approximately 11:20–11:30 a.m., Defendants Tuttle and Jackson entered Wing 2 of G-dormitory to feed inmates

---

[1] If McKinnon's initial Complaint (ECF No. 1), First Amended Complaint (ECF No. 43), or Second Amended Complaint (ECF No. 66) includes a specific, dispositive factual allegation which McKinnon did not include in his Third Amended Complaint, the court will cite to that particular pleading. If the court does not include a citation, the fact is taken from the Third Amended Complaint (ECF No. 84).

Case No. 3:18cv1191/LAC/EMT

the noon meal. Inmates informed Tuttle and Jackson that McKinnon was unresponsive in his cell. Tuttle and Jackson knew that McKinnon was diabetic and at risk for hypoglycemia. Tuttle and Jackson saw that McKinnon was unresponsive in his cell, but instead of obtaining medical assistance for McKinnon, they left McKinnon's food tray at his cell, which was Cell #117 and was on the bottom floor of the dormitory, and they proceeded to feed the other inmates, including the inmates on the second floor of the dormitory. After feeding the entire Wing 2, Tuttle and Jackson returned to McKinnon's cell and radioed a request that McKinnon's cell door be opened. Tuttle and Jackson then allowed another inmate to enter McKinnon's cell, while they stood outside.

Defendant Sergeant Hullett, who also knew that McKinnon was diabetic, approached McKinnon's cell upon hearing the radioed request to open the cell door and observing that the cell door was open. Hullett ordered the inmate to leave McKinnon's cell, and ordered "everyone" to leave Wing 2. Other inmates began banging on their cell doors, yelling, "Man down! 17 bottom!" Minutes later, Hullett returned to Wing 2 and acted as if he was conducting a security check. Another inmate notified Hullett that McKinnon was unresponsive. Hullett then went to McKinnon's cell and attempted to get a response. Other inmates yelled, "Sarge, you see he can't move!", "He's incoherent!", and "You're just standing there, do something!" Hullett responded with expletives and then left Wing 2.

Case No. 3:18cv1191/LAC/EMT

More time passed as other inmates yelled for help. Defendants Officers Scheier and Carrico entered Wing 2. Scheier was aware that McKinnon was diabetic and was at risk for hypoglycemia. Other inmates notified Scheier and Carrico that McKinnon was unresponsive and needed immediate medical attention. The officers yelled, "Count is more important!" Scheier and Carrico commenced the count, and when they reached McKinnon's cell, they saw his condition and proceeded with the count, allegedly in accordance with the FDOC policy that count takes priority over an inmate's medical needs.

When count concluded, Sergeant Hullett and another officer secured McKinnon with handcuffs and leg restraints, placed him in a wheelchair, and transported him to the dormitory's medical triage room. McKinnon was unable to walk, stand, speak, or lift his head. Upon seeing McKinnon, Defendant Nurse Williams stated, "Oh my God! He's one step away from a coma!" Nurse Williams measured McKinnon's blood glucose level and determined it was 43. While Nurse Williams was attempting to treat McKinnon, Sergeant Hullett walked in and out of the triage room, telling Williams that McKinnon needed to be returned to his cell as soon as possible, because the warden was coming to the dormitory for an inspection, and Hullett "wanted to look good for the warden." Nurse Williams returned McKinnon to security, allegedly without completing the FDOC's protocol for treating hypoglycemia. Sergeant Hullett wheeled McKinnon from the dormitory's

Case No. 3:18cv1191/LAC/EMT

medical triage room to McKinnon's cell, even though McKinnon was still suffering from hypoglycemia and could not walk, talk, stand, or lift his head. Hullett lifted McKinnon out of the wheelchair, dragged him into the cell, and placed him on his bunk while fully restrained with handcuffs and leg restraints (*see* McKinnon's Response, attached Exhibit B, Inmate Grievance).

McKinnon was left unattended in his cell for approximately 45 minutes. He moaned for help, while other inmates yelled to get the officers' attention. McKinnon fell off his bunk and was stuck on his back fully restrained "in positional asphyxiation." The warden and supervisors entered Wing 2 for inspection. Captain Parratt saw McKinnon and immediately radioed for his cell door to be opened. McKinnon was taken to Nurse Williams for treatment. Williams measured McKinnon's blood sugar and determined it was 53. During this second visit, Williams completed the protocol for treating hypoglycemia (*see* First Amended Complaint, ECF No. 43 at 13).

McKinnon alleges Centurion failed to adopt a policy for responding to cases of severe hypoglycemia, and failed to provide sufficient medical staff to treat inmates' medical needs. He also alleges Centurion failed to provide a snack between meals, which would have prevented the onset of his hypoglycemic episode.

C.   Discussion

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Gilmore v. Hodges*, 738 F.3d 266, 271 (11th Cir. 2013). Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.

Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105–06.  Conduct that is more than merely negligent includes:  "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

A plaintiff may also establish deliberate indifference by showing "[a] complete denial of readily available treatment," or that the defendants "delay[ed] necessary treatment for non-medical reasons." *Bingham*, 654 F.3d at 1176.  Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for

the delay. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citation omitted).

To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837.

In the prison context, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment." *Beard v. Banks*, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006). A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment. *See Estelle*, 429 U.S. at 107–08. Further, a mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). Moreover, "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A municipality, or functional equivalent thereof, is not liable under section 1983 for injuries caused solely by its employees, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004), and may be held liable only when the execution of a government policy or custom causes the injury. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There are several different ways of establishing municipal liability under § 1983. A municipality may be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 661, 694—95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *McCusik v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991). And a municipality may be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). So not all theories of

municipal liability under § 1983 require (or depend on) a single final policymaker. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

Here, the fact that McKinnon is a diagnosed diabetic satisfies the "serious medical need" element of an Eighth Amendment claim. However, McKinnon has not pleaded factual content that allows the court to draw the reasonable inference that Nurse Williams was deliberately indifferent to McKinnon's need for medical treatment for his hypoglycemic episode. McKinnon admits Nurse Williams provided medical attention twice within one hour. He also admits his medical condition improved after the first visit (i.e., his blood glucose level increased from 43 to 53), and resolved after the second/last visit. McKinnon's factual allegations are not sufficient to nudge his Eighth Amendment claim against Nurse Williams over the line from conceivable to plausible. Because McKinnon has not stated a plausible claim of deliberate indifference against Nurse Williams, her conduct also cannot serve as an underlying constitutional violation to establish liability for Centurion. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

Moreover, McKinnon's attempt to hold Centurion liable for the <u>onset</u> of his hypoglycemic episode (as opposed its <u>duration</u>), on the theory that Centurion failed to provide a snack between meals, is implausible. According to FDOC policy, the FDOC, not Centurion, is responsible for providing nutritionally adequate diets, including therapeutic diets designed to meet the requirements of an inmate's prescribed medical condition. *See* Fla. Admin. Code R. 33-204.002(2). Therefore, McKinnon's attempt to hold Centurion liable on this theory is unavailing.

McKinnon's factual allegations fail to state a plausible Eighth Amendment claim against Centurion or Nurse Williams; therefore, Defendants' motion to dismiss should be granted, and McKinnon's Eighth Amendment claims against these Defendants dismissed for failure to state a claim upon which relief may be granted, under Rule 12(b)(6) and § 1915(e)(2)(B)(ii).

III.   STATE LAW CLAIMS

McKinnon's claims of negligence and medical malpractice arise out of the rendering of, or failure to render, medical care or services; therefore, the claims are subject to the pre-suit requirements of Florida's Medical Malpractice Act, contained in Chapter 766, Florida Statutes. *See* Fla. Stat. §§ 766.106(1)–(2), 766.202(6); *see also Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996); *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 949 (Fla. 1994); *Shands Jacksonville Med. Ctr., Inc. v. Pusha*, 254 So. 3d 1076, 1081 (Fla. 1st DCA 2018) (citation omitted). These

statutory requirements include, but are not limited to, (1) conducting a pre-suit investigation, (2) notifying each prospective defendant of the intent to initiate litigation for medical negligence, (3) notifying the Department of Health by certified mail, return receipt requested, of an intent to initiate litigation for medical malpractice, if any prospective defendant is a health care provider licensed under Florida Statutes Chapter 458–61 or Chapter 466, and (4) submitting, to each prospective defendant at the time the notice of intent is mailed, a verified written medical expert opinion which corroborates the existence of reasonable grounds to initiate the litigation.  *See* Fla. Stat. §§ 766.104, 766.106, 766.203(2).  The pre-suit requirements apply to incarcerated plaintiffs.  *See O'Hanrahan v. Moore*, 731 So. 2d 95 (Fla. 4th DCA 1999); *Okaloosa Cnty. v. Custer*, 697 So. 2d 1297 (Fla. 1st DCA 1997).  Further, the statutory requirements also apply to cases filed in federal court.  *See McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164 (5th Cir. 1979); *Clark v. Sarasota Cnty. Pub. Hosp. Bd.*, 65 F. Supp. 2d 1308, 1314 (M.D. Fla. 1998).

      Centurion and Nurse Williams argue McKinnon failed to satisfy any of these pre-suit conditions (*see* ECF No. 93 at 8–9).  In McKinnon's Response, he argues his state law claims should not be dismissed because Defendants did not specify they were directing this defense at his state law claims (*see* ECF No. 102 at 3).

McKinnon's argument is frivolous. And he does not allege he satisfied Florida's statutory preconditions for filing a medical negligence/malpractice claim under state tort law. Therefore, McKinnon's state law claims should be dismissed for failure to comply with the statutory notification requirements.

## IV.  CONCLUSION

Accepting the allegations of Third Amended Complaint as true, and liberally construing them in the light most favorable to McKinnon, the undersigned concludes that McKinnon's allegations fail to give rise to a plausible Eighth Amendment claim against Defendant Centurion or Defendant Nurse Williams. Further, McKinnon failed to satisfy the statutory preconditions for bringing a medical negligence/malpractice claim against either of these Defendants under Florida state law. Therefore, the undersigned recommends that the District Judge grant the motion to dismiss and dismiss, with prejudice, McKinnon's federal and state claims.[2]

Accordingly, it is respectfully **RECOMMENDED**:

---

[2] The undersigned need not, and did not, address Defendants' other defenses (i.e., exhaustion, Eleventh Amendment immunity, and lack of physical injury under § 1997e(e)), in light of the conclusion that McKinnon's allegations fail to state a plausible federal claim and fail to show he satisfied the statutory preconditions for his state law claim.

Case No. 3:18cv1191/LAC/EMT

That Defendants Centurion and Nurse Williams' motion to dismiss (ECF No. 93) be **GRANTED,** and Plaintiff's federal and state law claims against Centurion and Nurse Williams be **DISMISSED WITH PREJUDICE**.

At Pensacola, Florida this 16th day of July 2019.

>   */s/ Elizabeth M. Timothy*
>   **ELIZABETH M. TIMOTHY**
>   **CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**